THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARYWOOD UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL STUDIES INSTITUTE LLC, d/b/a INTERNATIONAL STUDIES INSTITUTE: FLORENCE<br><br>Defendant. | : | 3:26-CV-1599<br>(JUDGE MARIANI) |

**MEMORANDUM OPINION**

Presently before the Court is Plaintiff's Motion to Remand (Doc. 5) the above captioned action to the Court of Common Pleas of Lackawanna County, following Defendant's removal on June 11, 2026. (*See* Doc. 1). For the reasons that follow, the Court will grant Plaintiff's Motion.

## I. BACKGROUND

The instant action concerns Plaintiff Marywood University's ("Plaintiff" or "Marywood") decision to terminate its third-party architecture study abroad program in Florence, Italy. For many years, Marywood's architecture study abroad program was administered by a private, third-party entity, International Studies Institute LLC ("ISI" or "Defendant"). On or around June 1, 2015, Marywood and ISI executed a Memorandum of

Understanding ("MOU").[1] (Doc. 8-1 at 7). The MOU provided the terms of a collaborative study abroad program, through which ISI would host students enrolled at Marywood and facilitate the students' enrollment in a semester-long academic program. (*Id.* at 3–7).

Approximately seven (7) years after executing the MOU, on or around July 8, 2022, the parties executed a second document, the Consortium Agreement. The parties firmly contest the scope and application of the Consortium Agreement, which, by its own terms, is "an addendum to the existing agreement"—i.e., the MOU[2]—"between Marywood and ISI." (Doc. 8-1 at 9). The Consortium Agreement further states, "Except where noted [in the Consortium Agreement], the provisions of the existing agreement are retained." (*Id.*). Defendant represents that consortium agreements are "common document[s] utilized in higher education to allow students in foreign study programs to receive financial aid when studying abroad [by] ... demonstrat[ing] that financial aid funds are being sent to a third-party provider ... for courses that are recognized for credit and graduation requirements by the home institution[.]" (Doc. 9 at 11). Indeed, the Consortium Agreement states that it "will facilitate course registration and application to degree requirements for students in the School of Architecture at Marywood University." (Doc. 8-1 at 9). Plaintiff argues that the Consortium Agreement amended and superseded the MOU, including by modifying the

[1] Although the parties did not enter into the MOU until 2015, they appear to have had a "commercial relationship" that predated the present contractual relationship. (*See* Doc. 6 at 2 (noting commercial relationship "spans more than fifteen years[.]")).

[2] Although the term "existing agreement" is not defined within the Consortium Agreement, both parties appear to accept that this term refers to the MOU. (*See* Doc. 9 at 12; Doc. 11 at 9).

proper timing for a party to give notice to terminate the study abroad program. (*See* Doc. 11 at 10).

The crux of the parties' dispute is whether Marywood gave timely notice of its intent to terminate the ISI third-party program and start its own "self-contained" Florence program. (Doc. 6 at 3; *see also* Doc. 8 at ¶ 25). On or around April 10, 2026, Marywood allegedly exercised its contractual right to terminate the ISI study abroad program at the conclusion of the Spring 2026 term (i.e., around May 2026). (Doc. 8 at ¶ 28). The MOU states that a party seeking to terminate its participation in the study abroad program must "giv[e] written notification to the other party at least nine months prior to the commencement of the succeeding [academic] term." (Doc. 8-1 at 7). The Consortium Agreement, on the other hand, states, "Either party may terminate the Agreement at any time and shall provide thirty (30) days written notice to the other party." (Doc. 8-1 at 10). The term "Agreement" is not defined in the Consortium Agreement. Plaintiff contends that the MOU and Consortium Agreement represent a single, unified contract. (*See generally* Docs 6, 8, and 11). Defendant views the MOU and Consortium Agreement as separate and distinct agreements, such that Marywood could terminate the Consortium Agreement (i.e., obligations relating to course registration, academic credits, and grading) without terminating the broader study abroad program, which is allegedly governed by the MOU. (*See generally* Doc. 9).

The parties further dispute the application of the two agreements because the Consortium Agreement, but not the MOU, contains a forum selection clause. The

Consortium Agreement provides that "all matters arising from [this Agreement] will be governed by, construed by, and enforced by the laws of the Commonwealth of Pennsylvania. Venue shall be in the Court of Common Pleas of Lackawanna County." (Doc. 8-1 at 11). The MOU contains no express provision for governing law or forum selection. Based on the forum selection clause in the Consortium Agreement, Plaintiff argues that removal to federal court was improper, and the action should be remanded to the Lackawanna County Court of Common Pleas, which is allegedly the sole proper venue that the parties consented to.

The parties do not dispute that, following Plaintiff's Second Amended Complaint (Doc. 8), this Court has subject matter jurisdiction to adjudicate the present dispute, because there is complete diversity of citizenship between the parties, (*see* Doc. 11 at 5), and Plaintiff seeks damages in excess of $75,000, satisfying the amount in controversy requirement. *See* 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States[.]"). However, Plaintiff contends that ISI contractually waived its right to removal and agreed to exclusive venue in the Court of Common Pleas of Lackawanna County. Defendant responds that the action concerns claims outside the limited scope of the Consortium Agreement, such that the forum selection clause does not govern the entirety of this action, and removal is proper.

## II. STANDARD OF REVIEW

A defendant may generally remove "any civil action brought in a State court" so long as "the district courts of the United States have original jurisdiction" over the action. *See* 28 U.S.C. § 1441(a). However, "[r]emoval statutes are to be strictly construed, with all doubts to be resolved in favor of remand." *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009) (citing *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992)); *see also, Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 219 (3d Cir. 2005) ("The statute governing removal, 28 U.S.C. § 1441, must be strictly construed against removal."). "It is now settled in [the Third Circuit] that the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007) (citing *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392 (3d Cir. 2004)). "That burden is particularly heavy when the party seeks to avoid a forum selection clause through use of removal." *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 218 (3d Cir. 2015) (citing *Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972)).

## III. ANALYSIS

The issue before the Court is whether the present action must be remanded due to the forum selection clause contained in the Consortium Agreement.

When a party enters into a contract containing an express forum selection clause, the party may waive their statutory right of removal. *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1216–17 (3d Cir. 1991). Federal courts employ ordinary contract construction

and interpretation principles to determine whether a forum selection clause constitutes waiver of the right to remove. *See New Jersey v. Merrill Lynch & Co.*, 640 F.3d 545, 548 (3d Cir. 2011) ("In determining whether parties have contractually waived the right to remove to federal court, a court should 'simply ... us[e] the same benchmarks of construction and [interpretation]...it employs in resolving all preliminary contractual questions.'" (citing *Foster,* 933 F.2d at 1217 n. 15)). Accordingly, the Court will first "look to the 'plain and ordinary meaning' of the forum selection clause," and, if the clause unambiguously waives the right to remove, the Court must remand the action. *Id.* (affirming remand order based on plain language of forum selection clause).

The forum selection clause at-issue states:

> This Agreement, and all matters arising from it, will be governed by, construed by, and enforced by the laws of the Commonwealth of Pennsylvania. Venue shall be in the Court of Common Pleas of Lackawanna County

(Doc. 8-1 at 11). The Court agrees that this clause is a straightforward, unambiguous waiver of the right to remove. The contractual provision states that venue "*shall*" be proper in only one court—the Court of Common Pleas of Lackawanna County—thus containing a mandatory directive that no other court may serve as a proper venue. Courts frequently find that less direct language constitutes waiver, even when the parties have not specified a specific venue. *See Foster*, 933 F.2d. at 1216 (finding forum selection clause that stated party "will submit to the jurisdiction of any court of competent jurisdiction within the United States" constituted waiver of right to remove, and collecting "long line of cases" finding same); *see also Frosty Valley Country Club Inc. v. Integrity Golf Co., LLC*, 2018 WL

3141717, at *3 (M.D. Pa. June 27, 2018) (finding plain language of forum selection clause foreclosed removal where contract stated that "any suit ... with respect to this [agreement] shall always be lodged in the State Courts of the Pennsylvania Judicial Circuit in and for Montour County, Pennsylvania").

Having found that the Consortium Agreement's forum selection clause constitutes waiver of the right to remove, the Court must also determine whether this action is a "matter[] arising from" the Consortium Agreement. (Doc. 8-1 at 11). Indeed, Defendant contests that the present action arises from the Consortium Agreement, arguing that the action also concerns the MOU, which Defendant posits is a separate agreement with a distinct scope. (*See generally* Doc. 9). However, the Court need not reach the integration and application of the MOU and Consortium Agreement. Instead, the Court need only address the threshold issue of whether Plaintiff's four causes of action are related to the Consortium Agreement.

Plaintiff brings four claims, each of which patently arise from the Consortium Agreement. Count I, seeking an injunction preventing Defendant from mediating the dispute in Italy, arises from Plaintiff's allegation that the forum selection clause provides only one, proper venue. (*See* Doc. 8 at 9–10). Count II alleges breach of the Consortium Agreement itself. Count III seeks a declaration that the Consortium Agreement superseded or modified the MOU. Finally, Count IV alleges Defendant tortiously interfered with Marywood's establishment of its own, self-contained study abroad program, despite Marywood's alleged right to terminate—pursuant to the Consortium Agreement—the third-party study abroad

program administered by ISI. Each of these causes of action clearly relate to the Consortium Agreement, and the entire action would not have been brought but for the Consortium Agreement. In similar cases, courts have broadly interpreted language in a forum selection clause like "arising from," (Doc. 8-1 at 11), finding that such language means "connected by reason of an established or discoverable relation." *Carlyle*, 779 F.3d at 220 (citations omitted). "An action need not even allege contract-based claims in order for a forum selection clause in a contract to be enforced." *Id.* (citing *Ashall Homes Ltd. v. ROK Entm't Grp. Inc.*, 992 A.2d 1239, 1249 (Del. Ch. 2010), for the proposition that a "forum clause applies when claims 'grow out of the contractual relationship'"). Here, even Plaintiff's non-contract claims grow out of the Consortium Agreement.

Because the Court finds that each cause of action relates to the Consortium Agreement, the Court need not (and does not) reach the question of whether or *how* the Consortium Agreement modifies or supersedes the MOU. (*See, e.g.*, Doc. 8-1 at 9 ("Except where noted [in this Consortium Agreement], the provisions of the existing agreement [the MOU] are retained.")). Defendant's theory that the proper notice period is provided by the MOU, not the Consortium Agreement, does not alter the fact that the present action nonetheless "arises from" disputed language in the Consortium Agreement. Indeed, the court in *Carlyle* was similarly confronted with two agreements—one containing a forum selection clause, and the other without. The *Carlyle* Court found that "the [party] would not have any claims ... but for the [agreement] that contains the forum selection clause." *Id.* at 220.

Defendant's arguments to the contrary miss the mark because they essentially urge the Court to make a determination of the final merits of this case—i.e., whether the Consortium Agreement or MOU provide the proper notice period for terminating the study abroad program. But this case can (and does) "arise from" the Consortium Agreement—even if the proper court ultimately finds that the Consortium Agreement did not modify Marywood's proper termination notice period—because Marywood purported to give notice pursuant to the Consortium Agreement's terms. The entire action is inextricably bound up with the Consortium Agreement, and the interpretation of that agreement is a predicate to the disposition of this action (including a disposition in favor of Defendants). The Court is further unpersuaded by Defendants' arguments because, as previously noted, "[t]he federal removal statute ... require[es] remand if any doubt exists over whether removal was proper." *Carlyle*, 779 F.3d at 218 (citing *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir.1985)). To the extent there is any ambiguity as to the applicable contractual provision, as Defendant argues, that ambiguity counsels *in favor* of remand, not against.

Finally, the Court will briefly address Defendant's argument that enforcing the forum selection clause would be "unfair and unreasonable." (*See* Doc. 9 at 25). Although "forum selection clauses are 'prima facie valid'" a Court may decline to enforce them if "enforcement is shown by the resisting party to be unreasonable under the circumstances." *Foster*, 933 F.2d at 1219 (citing *Bremen*, 407 U.S. at 10). The party alleging enforcement is unreasonable must make "a 'strong showing' either that the forum thus selected is 'so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day

in court,' or that the clause was procured through 'fraud or overreaching[.]'" *Id.* (citations omitted). Here, Defendant recites the purpose of diversity jurisdiction—to avoid possible prejudice to foreign litigants (*see* Doc. 9 at 26)—without making any strong or particularized showing that the Court of Common Pleas of Lackawanna County will be a non-objective, prejudiced forum. While Defendant notes that Marywood is "one of Lackawanna County's well-known schools of higher education," and Defendant does not want to litigate in Plaintiff's "backyard," (Doc. 9 at 26–27), such generalized arguments, without more, are unavailing. Defendant's position would effect a *de facto* nullification of nearly *all* forum selection clauses as unreasonable simply because a federal court sitting in diversity jurisdiction is available. The Defendant, therefore, has not made an appropriately strong showing that enforcement of the bargained-for forum selection provision would be unfair. *See Carlyle*, 779 F.3d at 218 (noting "particularly heavy" burden to avoid enforcement of forum selection clause).

The Consortium Agreement's forum selection clause plainly mandates only one venue, the Lackawanna Court of Common Pleas, for matters "arising from" the Consortium Agreement. Defendant executed the Consortium Agreement containing this unambiguous language, and Plaintiff would not have actionable claims but for the Consortium Agreement. As the Third Circuit has noted, a court commits "clear error—and violence to the parties' contract—" if it retains a case on its docket despite a forum selection clause barring removal. *Foster*, 933 F.2d at 1216 (noting that, upon finding of enforceable forum selection

clause, the district court "had *no* discretion whatsoever *not* to remove the case from its docket"). Thus, the action must be remanded.

## IV. CONCLUSION

For the aforementioned reasons, Plaintiff's Motion to Remand (Doc. 5) will be granted. A separate order follows.

Robert D. Mariani
United States District Judge